# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

       Plaintiff,

         v.

HOLLYFRONTIER REFINING &
MARKETING LLC, FRONTIER EL
DORADO REFINING LLC, HOLLY
REFINING & MARKETING
COMPANY – WOODS CROSS LLC, AND
NAVAJO REFINING COMPANY, L.L.C.,

       Defendants.

**CONSENT DECREE**

Case No. 1:15-cv-02024

### TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. JURISDICTION AND VENUE ............................................................................. 2

III. DEFINITIONS ...................................................................................................... 3

IV. APPLICABILITY/PARTIES BOUND ................................................................ 5

V. CIVIL PENALTY .................................................................................................. 6

VI. MITIGATION PROJECTS .................................................................................. 7

VII. REPORTING/COMPLIANCE REQUIREMENTS ........................................ 10

VIII. STIPULATED PENALTIES ........................................................................... 11

IX. FORCE MAJEURE ............................................................................................ 15

X. DISPUTE RESOLUTION ................................................................................... 17

XI. INFORMATION COLLECTION AND RETENTION OF RECORDS ........... 19

XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ....................... 21

XIII. COSTS ............................................................................................................. 23

XIV. NOTICES ........................................................................................................ 23

XV. RETENTION OF JURISDICTION .................................................................. 24

XVI. MODIFICATION ............................................................................................ 24

XVII. TERMINATION ............................................................................................ 25

XVIII. PUBLIC PARTICIPATION ........................................................................ 25

XIX. SIGNATORIES/SERVICE ............................................................................ 26

XX. INTEGRATION ............................................................................................... 26

XXI. FINAL JUDGMENT ...................................................................................... 26

# I. INTRODUCTION

WHEREAS, Plaintiff, United States of America ("United States" or "Plaintiff"), on behalf of the United States Environmental Protection Agency ("the EPA"), has filed a Complaint for civil penalties and other relief against HollyFrontier Refining & Marketing LLC, Frontier El Dorado Refining LLC, Holly Refining & Marketing Company – Woods Cross LLC, and Navajo Refining Company, L.L.C., (collectively, the "Defendants") under the Clean Air Act ("CAA" or "Act"), Title II, Sections 205(b) and 211(d), as amended, 42 U.S.C. §§ 7524(b) and 7545(d), for alleged violations of Section 211(c) and (h) of the CAA, 42 U.S.C. §§ 7545(c) and (h), and the fuels regulations promulgated thereunder and published at 40 C.F.R. Part 80 (the "Fuels Regulations");

WHEREAS, the United States alleges that Defendants are liable for civil penalties and other relief for the violations alleged in its Complaint;

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the EPA discovered the alleged violations pled in the Complaint from information self-disclosed by the Defendants;

WHEREAS, Defendants represent that, prior to entry of this Consent Decree, Defendants took several actions in an attempt to come into compliance with the sampling, sample management, testing, recordkeeping, reporting, and product transfer documentation requirements set forth in the Fuels Regulations at the Navajo Refinery in Artesia, New Mexico; Cheyenne Refinery in Cheyenne, Wyoming; Tulsa Refinery in Tulsa, Oklahoma; El Dorado Refinery in El Dorado, Kansas; and Woods Cross Refinery in Woods Cross, Utah, including establishing a Fuels Quality Team, utilization of outside technical experts, and training of employees, including laboratory personnel;

1

WHEREAS, Defendants represent that, no later than 365 Days after the Effective Date, they will complete a third-party audit to evaluate compliance with the Fuels Regulations at the Navajo Refinery in Artesia, New Mexico; Cheyenne Refinery in Cheyenne, Wyoming; Tulsa Refinery in Tulsa, Oklahoma; El Dorado Refinery in El Dorado, Kansas; and Woods Cross Refinery in Woods Cross, Utah, and further represent that all noncompliant conditions identified by that audit will be promptly brought into compliance;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest; and

WHEREAS, without a trial regarding any issue of fact or law, the Parties agree to entry of this Consent Decree.

NOW, THEREFORE, before the taking of any testimony and with consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and CAA Sections 205(b) and 211(d), 42 U.S.C. §§ 7524(b) and 7545(d), and personal jurisdiction over the Parties.

2.     Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), 1395(a), and Section 205(b) of the Act, 42 U.S.C. § 7524(b), because the EPA Administrator's principal place of business is located in this judicial district.

3.     Solely for purposes of this Consent Decree, Defendants waive any defenses they might have to jurisdiction and venue, accept the Court's jurisdiction over the Parties and this Consent Decree and any action to enforce this Consent Decree, and consent to venue in this judicial district.

4.     Defendants waive service of the Complaint and summons in this matter pursuant to Fed. R. Civ. P. 4(d) and agree that the Complaint states claims upon which relief may be granted pursuant to CAA Section 211(h) of the CAA, 42 U.S.C. § 7545(h), and the Fuels Regulations. Without admitting or denying the factual allegations contained in the Complaint, Defendants consent to the terms of this Decree

## III. DEFINITIONS

5.     Terms used in this Decree that are defined in the CAA or in regulations promulgated thereunder shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Decree, the following definitions shall apply:

  a.     "Act" or "CAA" means the Clean Air Act, as amended, 42 U.S.C. §§ 7401 et seq.;

  b.     "Complaint" shall mean the Complaint filed by the United States in this action;

  c.     "Completion Date(s)" shall mean the dates stated in Appendix A (Mitigation Projects);

  d.     "Consent Decree" or "Decree" means this Consent Decree and Appendix A;

  e.     "Covered Facilities" shall for purposes of Appendix A (Mitigation Projects) mean Tanks 145 and 146 at the Woods Cross Refinery;

  f.     "Date of Lodging of the Consent Decree" shall mean the date the signed Decree is filed with the Court;

  g.     "Day" shall mean a calendar day.  In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or Federal Holiday, the period shall run until the close of business of the next working day;

3

h.     "Defendants" shall mean HollyFrontier Refining & Marketing LLC, Frontier El Dorado Refining LLC, Holly Refining & Marketing Company – Woods Cross LLC, and Navajo Refining Company, L.L.C.;

i.     "Effective Date" shall mean the date upon which this Decree is entered by the Court or a motion to enter the Decree is granted, whichever is first, as recorded in the Court's docket;

j.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

k.     "Interest" means interest at the rate specified for debts owed to departments or agencies of the United States pursuant to 28 U.S.C. § 1961;

l.     "Force Majeure" shall have the meaning set forth in Paragraph 42 of this Decree;

m.     "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral;

n.     "Parties" means the United States, HollyFrontier Refining & Marketing LLC, Frontier El Dorado Refining LLC, Holly Refining & Marketing Company – Woods Cross LLC, and Navajo Refining Company, L.L.C.  Each of the foregoing entities shall be a "Party;"

o.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

p.     "Subparagraph" means a portion of this Consent Decree identified by a lower case letter; and

q.     "United States" shall mean the United States of America, acting on behalf of the EPA.

4

## IV. APPLICABILITY/PARTIES BOUND

6.      This Decree applies to and is binding upon the United States and Defendants, any of Defendants' successors and assigns, and other entities or persons otherwise bound by law.

7.      Unless otherwise expressly specified in this Decree, the obligations of Defendants under this Decree are joint and several.  In the event of the insolvency of any Defendant, or failure of any Defendant to comply with the obligations of this Decree, the remaining Defendants shall complete all such obligations.

8.      Unless approved by the Parties in writing, any change in the ownership, control, business organization, or financial status of any Defendant shall in no way alter that Defendant's obligations under this Decree.

9.      Except as provided in Section IX of this Decree (Force Majeure), Defendants shall ensure that the performance of their obligations in this Decree are undertaken in accordance with the deadlines and requirements contained in this Decree and Appendix A.  Defendants shall provide a copy of this Decree and Appendix A to all their officers, members, employees, and agents whose supervisory or managerial responsibilities include compliance with the terms of this Decree and Appendix A.  Defendants shall condition any contract for work required under this Decree and Appendix A upon performance of that work in conformance with the terms of this Decree and Appendix A and shall provide each such contractor responsible for performing that work with a copy of this Decree and Appendix A, or all relevant portions thereof.

10.     In any action to enforce this Decree, Defendants shall not assert as a defense the failure by any of their officers, members, employees, agents, or contractors, to take any actions necessary to comply with the terms of this Decree, unless Defendants establish that such failure resulted from a Force Majeure event as that term is defined in Paragraph 42 (Section IX) of this Decree.

## V. CIVIL PENALTY

11.    By no later than thirty (30) Days after the Effective Date of this Decree, the Defendants shall together pay to the United States the total sum of $1,200,000.00 as a civil penalty.

12.    Defendants shall pay the civil penalty by FedWire Electronics Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following the Effective Date, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Columbia, Judiciary Center Bldg., 555 4th Street, NW, Room 10-312, Washington, DC 20001, phone (202) 252-6600.  At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter stating that the payment is for the civil penalty owed pursuant to the Decree in United States v. HollyFrontier Refining & Marketing LLC, et al., and referencing the civil action number and DOJ case number 90-5-2-1-11113, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.cinwd@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

13.    If any portion of the total civil penalty due to the United States is not paid within the time specified in Paragraph 12, above, Defendants shall together pay Interest on the amount past due, accruing from the date payment was due.  Interest payment under this Paragraph shall be in addition to any stipulated penalty due.

14.    Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

## VI. MITIGATION PROJECTS

15.     Defendants represent that Tanks 145 and 146 at the Woods Cross Refinery are used to store gasoline; that there are no current discussions or plans to remove the tanks from gasoline service; that the tanks have external floating roofs; and that the tanks do not have, and are not required by state or federal law to have, controlled slotted guidepoles.  In accordance with the requirements and schedules contained in Appendix A (Mitigation Projects), Defendants shall install, maintain, and operate emission controls on and at the slotted guidepole fittings in the external floating roofs of Tanks 145 and 146 at the Woods Cross Refinery, as described in the Federal Register notice regarding "Slotted Guidepoles at Certain Petroleum and Organic Liquid Storage Vessels," 65 *Fed. Reg.* 19891 (April 13, 2000).  Defendants shall install the emission controls on and at the slotted guidepole fittings in the external floating roofs of Tanks 145 and 146 at the Woods Cross Refinery by December 31, 2015 (the "Completion Date") set forth in Appendix A.  Defendants estimate that the foregoing projects will achieve a total reduction of volatile organic compounds ("VOCs") emissions of approximately 11.9 tons per year ("TPY") per tank (total of approximately 24 TPY for two tanks) as determined by using AP-42 Chapter 7.1's estimate of emissions.  The Defendants shall use good faith efforts to secure the estimated emissions reductions identified in Appendix A (Mitigation Projects) for the projects identified in this Paragraph.

16.     Defendants shall maintain, and produce to the United States upon request, all non-privileged documents to substantiate the costs and the environmental benefits of the projects described in Paragraph 15, above, within thirty (30) Days of the date of receipt of the request.

17.     Any public statement referring to projects described in Paragraph 15, above, shall include the following language:  "This action was undertaken in connection with the settlement of an enforcement action, United States v. HollyFrontier Refining & Marketing LLC, et al., under the Clean Air Act."

7

18.    Within sixty (60) Days following the completion of all projects described in Paragraph 15, above, Defendants shall submit to the United States a Project Completion Report that documents the:  (a) date that each project was completed; (b) performance of the tasks required by Appendix A to substantiate the estimated emission reductions identified in Appendix A; (c) costs incurred by the Defendants in implementing each project, and (d) the defect and repair information required by Appendix A.

19.    Defendants shall retain an independent, third-party professional engineer ("PE"), licensed in the state where the tank projects described in Paragraph 15, above, are being performed, to review the Mitigation Projects identified in Paragraph 15, above, and Appendix A.  The PE's review of each project shall be submitted to the United States with the Project Completion Report and shall contain a certification by the PE that the Mitigation Projects required under Paragraph 15, above, were constructed and installed in accordance with the requirements of Paragraph 15, above, and Appendix A.

20.    With regard to each project described in Paragraph 15, above, Defendants shall certify in the Project Completion Report that:

    a.  The cost information Defendants provided to the EPA in connection with each project is complete and accurate;

    b.  The total mass emissions reduction for each project as determined by AP-42 Chapter 7.1 methodology is complete and accurate;

    c.  As of the date of the installation of the projects described in Paragraph 15, Defendants were not legally obligated by any federal, state, or local law or regulation or grant, or as the result of any judicial or administrative order, to install, maintain, or undertake in any way any of the projects;

8

d. Other than in settlement of the claims resolved in this Decree, the projects are not an action that Defendants were planning or intending to construct, perform, or implement;

e. They have not received and will not receive credit for the projects in any other enforcement action;

f. The projects set forth in Paragraph 15, above, were completed in accordance with applicable local, state, and federal requirements and permits, including, but not limited to, any required construction approvals; and

g. They have not and will not receive any reimbursement for all or some portion of the projects from any unaffiliated third-party "person" (as defined by the Act).

21. Subject to the conditions of Section XI (Information Collection and Retention of Records), all non-privileged plans and reports prepared by Defendants regarding each project described in Paragraph 15, above, shall be publicly available without charge.  Defendants may assert that any part of these plans or reports is protected from disclosure to any third party as confidential business information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, and the EPA wishes to disclose, the Parties agree that the procedures set forth in 40 C.F.R. Part 2 shall apply to such information.

22. If any obligation under Paragraph 15, above, requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section IX (Force Majeure) of this Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or

approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

23.     Appendix A (Mitigation Projects) is incorporated by reference herein and is enforceable as part of this Decree.

## VII.  REPORTING/COMPLIANCE REQUIREMENTS

24.     Each submittal required in Paragraphs 18 and 20, Appendix A, or under Section IX of this Decree (Force Majeure), shall be signed and certified by the authorized representative of the responsible Defendant(s): Vice President – Refinery Operations (currently Mr. Jim Stump).

25.     The certification required under Paragraph 24 shall include the following statement:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment, for knowingly and willfully submitting a materially false statement.

26.     All reports and submittals required by this Decree shall be sent to the persons or entities designated in Section XIV (Notices) of this Decree.

27.     The reporting requirements of this Decree do not relieve the Defendants of any reporting obligations required by the CAA or its implementing regulations, or any other reporting obligation required by any federal, state, or local law, regulation, permit, or other requirement.

28.     Any information submitted pursuant to this Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

29.     Whenever any violation of this Decree or any other event affecting Defendants' performance under this Decree may pose a threat to the public health or welfare or the environment, Defendants shall notify the EPA orally or by electronic transmission as soon as possible, but no later than twenty-four (24) hours after the Defendants first knew of the violation or event in accordance with Section XIV (Notices) of this Decree.

## VIII. STIPULATED PENALTIES

30.     Defendants shall be liable for stipulated penalties to the United States for violations of this Decree as set forth in this Section unless excused under Section IX (Force Majeure).

31.     If Defendants fail to pay the civil penalty required under Section V (Civil Penalty) of this Decree within the time specified in Section V, during the first fifteen (15) days, Defendants shall pay both Interest (calculated as specified in Paragraph 13 of this Decree) and a stipulated penalty of $1,000 per Day for each Day that Defendants' payment is late.  Beginning sixteen (16) Days after payment is due, and for each day thereafter, Defendants shall pay both Interest (calculated as specified in Paragraph 13 of this Decree) and a stipulated penalty of $3,500 per Day for each Day that Defendants' payment is late.

32.     If Defendants fail to timely comply with any of the requirements to which this Paragraph applies, the following stipulated penalties shall accrue each Day for each violation of the requirement to:

11

| Period of Noncompliance | Penalty Per Day of Violation |
|---|---|
| 1st through 14th Day | $1,000 |
| 15th through 30th Day | $5,000 |
| 31st Day and beyond | $10,000 |

    a.   Submit the information identified in Appendix A, Paragraph 3. a. – g.;

    b.   Complete the Mitigation Projects described in Section VI of this Decree by the Completion Dates as specified in Appendix A;

    c.   Maintain the integrity of the Mitigation Projects identified in Section VI of this Decree and Appendix A consistent with recognized industry practices, if applicable, and good engineering judgment;

    d.   Perform the tasks to substantiate the estimated emissions reductions of the Mitigation Projects as specified in Appendix A;

    e.   Notify the EPA of significant issues arising from the completion or maintenance of any Mitigation Project that could adversely impact public health or the environment as specified in Appendix A and Paragraph 29 of this Decree; and

    f.   Retain an independent, third-party PE to review and certify the projects as specified in Paragraph 19 of this Decree.

33.    Other Requirements: If Defendants fail to timely comply with any of the requirements to which this Paragraph applies, the following stipulated penalties shall accrue each Day for each violation of the requirement:

| Period of Noncompliance | Penalty Per Day of Violation |
|---|---|
| 1st through 14th Day | $250 |
| 15th through 30th Day | $500 |
| 31st Day and beyond | $1,500 |

    a.   Submit the Project Completion Report as specified in Paragraph 18 of this Decree;

     b.  Notify the EPA of any issues that result in a significant delay to the project completion schedules specified in Appendix A; and

     c.  Maintain and produce documents upon request as specified in Paragraph 16 of this Decree.

34.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day that the violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Separate stipulated penalties shall accrue simultaneously for different violations under this Decree but shall not accrue separately against each Defendant for the same violations.  Stipulated penalties shall accrue regardless of whether the United States provides the Defendants notice of the violation(s) of this Decree.

35.    Defendants shall pay stipulated penalties within thirty (30) Days of receiving the United States' written demand, unless Defendants invoke Dispute Resolution pursuant to Section X of this Decree.

36.    The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Decree.

37.    Stipulated penalties shall continue to accrue as provided in Paragraph 33 during Dispute Resolution but need not be paid until the following:

     a.  If the dispute is resolved by agreement or by a decision of the EPA that is not appealed to the Court, the Defendants shall pay accrued penalties determined to be owed, together with Interest, to the United States within thirty (30) Days of the Effective Date of the agreement or the receipt of the EPA's decision or order.

    b.  If the dispute is appealed to the Court and the United States prevails in whole or in part, the Defendants shall pay accrued penalties related to issues upon which the United States prevails and are determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order except as provided in subparagraph (c) below.

    c.  If any Party appeals the District Court's decision, the Defendants shall pay all accrued penalties determined to be owed, together with Interest, within fifteen (15) Days of receiving the final appellate court decision.

38.    Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Section V (Civil Penalty), with the transmittal letter stating that the payment is for stipulated penalties and for which violation(s) the penalties are being paid.

39.    If the Defendants fail to timely pay stipulated penalties according to this Decree, Defendants shall be liable for Interest on such penalties accruing as of the date payment became due.

40.    Stipulated penalties paid pursuant to this Section are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax deductible expenditures for purposes of federal law. Nothing in this Paragraph shall be construed to limit or prohibit the United States from seeking any remedy otherwise provided by law for the Defendants' failure to pay any stipulated penalties.

41.    Subject to the provisions in Section XII (Effect of Settlement/Reservation of Rights) of this Decree, the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violations of this

14

Decree or applicable law. Where a violation of this Decree is also a violation of the requirements of CAA Section 211, 42 U.S.C. § 7545, and its implementing regulations, including the Fuels Regulations, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX.  FORCE MAJEURE

42.    "Force Majeure," for the purposes of this Decree, is defined as any event arising from causes beyond the control of Defendants or of any entity controlled or contracted by Defendants, including but not limited to, Defendants' officers, members, employees, agents, contractors, and consultants, which delays or prevents the performance of any obligation under this Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that the Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring or (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. Depending upon the circumstances and Defendants' response to such circumstances, failure of a permitting authority to issue a necessary permit in a timely fashion may constitute a Force Majeure event where the failure of the permitting authority to act is beyond the control of the Defendant and the Defendant has taken all steps available to it to obtain the necessary permit, including, but not limited to:  submitting a complete and timely permit application; responding to requests for additional information by the permitting authority in a timely fashion; and accepting lawful permit terms and conditions after expeditiously exhausting any legal rights to appeal terms and conditions imposed by the permitting authority.  Force Majeure does not include the Defendants' financial inability to perform any obligation under this Decree.

43.    If any event occurs or has occurred that may delay the performance of any obligation under this Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice

15

orally and by electronic or facsimile transmission to the Director of the Air Enforcement Division, U.S. Environmental Protection Agency, and the EPA attorney advisor assigned to this matter (currently Natalie Firestine) within fourteen (14) business days of when Defendants first knew that the event might cause a delay. Within five (5) Days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment of public health, welfare, or the environment. Defendants shall include with any notice all available non-privileged documentation supporting the claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstances of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

44.     If the EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of obligations under this Decree that are affected by the Force Majeure event will be extended by the EPA for such time as is necessary to complete those obligations. An extension of time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance under any other obligation. The EPA will notify the Defendants of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

16

45.     If the EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, the EPA will notify the Defendants in writing of its decision.

46.     If the Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) of this Decree, they shall do so no later than fifteen (15) business days after receipt of the EPA's notice.  In any such proceeding, the Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay was caused or will be caused by a Force Majeure event; that the delay or anticipated delay or the extension sought was or will be warranted under the circumstances and that best efforts were taken or will be taken to avoid and mitigate the effects of the delay; and that the Defendants complied with the requirements of Paragraphs 42 and 43 above.  If the Defendants carry this burden, the delay at issue shall be deemed not to be a violation by the Defendants of the affected obligation of this Decree identified to the EPA.

## X.  DISPUTE RESOLUTION

47.     Unless otherwise expressly provided for in this Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude the Defendants from raising such issue as a defense to an action by the United States to enforce any obligation of the Defendants under this Decree.

48.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when one Party sends to the other a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of dispute shall not exceed twenty (20) business days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States

17

shall be considered binding unless, within forty-five (45) Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures set forth below.

49.    <u>Formal Dispute Resolution</u>.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

50.    The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, all factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

51.    Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices) of this Decree, a motion requesting judicial resolution of the dispute.  The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any proposed schedule within which the dispute must be resolved for orderly implementation of the Decree.

52.    The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

53.   <u>Burden and Standard of Review</u>.  Except as otherwise provided in this Decree, in any dispute brought under Paragraph 49 (Formal Dispute Resolution) of this Decree, Defendants shall bear the burden of demonstrating that their position complies with this Decree and the CAA and that they are entitled to relief under applicable principles of law.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and Defendants reserve the right to argue to the contrary.

54.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Defendants under this Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 37.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION OF RECORDS

55.   The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Decree, at a reasonable time, upon presentation of credentials, to:

    a.  Monitor the progress of activities required under this Decree;

    b.  Verify any information or data submitted to the United States in accordance with the terms of this Decree;

    c.  Obtain documentary evidence, including photographs and similar data; or

    d.  Assess the Defendants' compliance with this Decree.

56.    Until two (2) years after the termination of this Decree, Defendants shall preserve and retain, and shall instruct its contractors and agents to preserve and retain, all records, documents, or other information (including documents, records, or other information in electronic form) now in their or their contractors' or agents' possession or control, or which come into their or their contractors' or agents' possession or control, that relate to the Defendants' performance of the requirements of this Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  The records retention requirement imposed under this Consent Decree does not affect, modify, or excuse Defendants from compliance with any other records retention requirements imposed by federal, state, or local laws or regulations.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any non-privileged documents, records, or other non-privileged information required to be maintained under this Paragraph.  The records retention requirement imposed under this Decree does not affect, modify, or excuse Defendants from compliance with any other records retention requirements imposed by federal, state, or local laws or regulations.

57.    After the conclusion of the two-year period following the expiration of the document retention period in Paragraph 56, Defendants shall notify the United States at least 90 Days prior to the destruction of any such records or documents, and, upon request by the United States, Defendants shall deliver any such records or documents to the United States.  If any Defendant asserts that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law, it shall provide the United States with the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of the author of the document, record, or

20

information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted. However, no documents, records, or other information created or generated pursuant to the requirements of this or any other Decree with the United States shall be withheld on the grounds that they are privileged. If a claim of privilege applies only to a portion of documents, records, or other information, the documents, records, or other information shall be provided to the United States in redacted form to mask the privileged information only. Defendants shall retain all documents, records, or other information that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim before this Court and any such dispute has been resolved in Defendants' favor. Absent a dispute over a claim of privilege, nothing in this Paragraph shall operate to extend the document retention period set forth in Paragraph 56, above.

58.     Defendants may assert that information required to be provided under this Decree is protected as CBI under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

59.     This Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

60.     This Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action to the Date of Lodging of this Decree.

61.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree.

21

62.     This Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or its implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 60.

63.     The United States reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, any of the Defendants' facilities, whether related to the violations addressed in this Decree or otherwise.

64.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to Defendants' alleged violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 60.

65.     This Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining compliance with all applicable federal, state, and local laws, regulations, and permits and Defendants' compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, state, or local laws, regulations, or permits.

66.     This Decree does not limit or affect the rights of Defendants or of the United States against any third parties not party to this Decree nor does it limit the rights of third parties not party to this Decree against Defendants except as otherwise provided by law.

67.     This Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XIII.  COSTS

68.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not timely paid by the Defendants.

## XIV.  NOTICES

69.     Unless   otherwise   provided   herein,   whenever   notifications,   submissions,   or communications are required by this Decree, they shall be made in writing addressed as follows:

> To the United States:
>
>> Chief, Environmental Enforcement Section
>> Environment and Natural Resources Division
>> U.S. Department of Justice
>> PO Box 7611
>> Washington, D.C. 20044-7611
>> Ref: 90-5-2-1-11113
>
> To the EPA:
>
>> Director
>> Air Enforcement Division
>> Office of Enforcement and Compliance Assurance
>> U.S. Environmental Protection Agency
>> 1200 Pennsylvania Avenue, N.W. Mail Code 2422A
>> Washington, D.C. 20460
>>
>> Natalie Firestine
>> Attorney-Advisor

23

Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1595 Wynkoop Street (8MSU)
Denver, Colorado 80202
Telephone:  (303) 312-7165
Telefax:  (303) 312-6003
Email:  firestine.natalie@epa.gov

To Defendants:

Senior Vice President & General Counsel
The HollyFrontier Companies
2828 N. Harwood, Suite 1300
Dallas, Texas 75201

Senior Manager, Corporate Environmental
The HollyFrontier Companies
2828 N. Harwood, Suite 1300
Dallas, Texas 75201

70.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

71.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, which does not include electronic mail, unless otherwise provided by this Decree or by mutual agreement of the Parties in writing.

## XV. RETENTION OF JURISDICTION

72.     The Court shall retain jurisdiction over this case until termination of this Decree, for the purpose of resolving disputes under this Decree or entering orders modifying this Decree, pursuant to Section X (Dispute Resolution) and Section XVI (Modification), or by effectuating or enforcing compliance with the terms of this Decree.

## XVI. MODIFICATION

73.     The terms of this Decree, including the attached Appendix, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

24

74.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided in Paragraph 53, the Party seeking the modification bears the burden of demonstrating that it is entitled to the modification in accordance with the Fed. R Civ. P. 60(b).

## XVII.  TERMINATION

75.     This Decree may be terminated four (4) years after the Effective Date if the United States determines that Defendants have satisfactorily completed their obligations under this Decree, including payment of the civil penalty under Section V, Mitigation Projects under Section VI, and any outstanding stipulated penalties under Section VIII.  Once these conditions have been met, the Parties shall file with the Court an appropriate stipulation reciting that the requirements of the Decree have been met and Request for Termination of the Decree.

76.     If the United States does not agree that the Decree may be terminated, or if Defendants do not receive a response from the United States within sixty (60) Days of Defendants' submission of the Request for Termination, Defendants may invoke Dispute Resolution under Section X of this Decree.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until at least sixty (60) Days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

77.     This Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate.  Defendants consent to the entry of this Decree without further notice and agree not to withdraw from, or oppose entry of, this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Decree.

## XIX. SIGNATORIES/SERVICE

78.     Each undersigned representative of the Defendants, the EPA, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certify that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

79.     This Decree may be signed by counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Parties agree that Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Decree.

## XX. INTEGRATION

80.     This Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and Appendix A, and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI. FINAL JUDGMENT

81.     Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment of the Court as to the United States and the Defendants.

**JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THIS CONSENT DECREE THIS _11th_ DAY OF _January_, 2016**

26

UNITED STATES DISTRICT COURT JUDGE
District of Columbia

27

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u> <u>HollyFrontier Refining & Marketing LLC, et al.</u>

FOR THE UNITED STATES OF AMERICA:

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: November 19, 2015

JOHN N. MOSCATO
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
United States Department of Justice
999 18th Street, South Terrace - Suite 370
Denver, CO 80202
Email: john.moscato@usdoj.gov
Telephone: (303) 844-1380
Facsimile: (303) 844-1350

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. HollyFrontier Refining & Marketing LLC, et al.

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

4/17/15
Date

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

11/13/15
Date

SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

11/10/2015
Date

for
PHILLIP A. BROOKS
Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2422A
Washington, D.C. 20406

11/2/2015
Date

NATALIE FIRESTINE
Attorney Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1595 Wynkoop Street (8MSU)
Denver, CO 80202

29

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. HollyFrontier Refining & Marketing LLC, et al.

FOR DEFENDANT HOLLYFRONTIER
REFINING & MARKETING LLC

_10.26.15_
Date

MARK A. PLAKE
Vice President, Marketing
HollyFrontier Refining & Marketing LLC
2828 N. Harwood, Suite 1300
Dallas, TX 75201

FOR DEFENDANT FRONTIER EL DORADO
REFINING LLC

_10-26 2015_
Date

SKIPPER KISTLER
Vice President and Refinery Manager
Frontier El Dorado Refining LLC
1401 Douglas Road
El Dorado, KS 67042

FOR DEFENDANT HOLLY REFINING &
MARKETING COMPANY – WOODS CROSS
LLC

_10/26/15_
Date

MIKE WRIGHT, JR.
Vice President and Refinery Manager
Holly Refining & Marketing Company – Woods
Cross LLC
1070 West 500 South
West Bountiful, UT 84087

FOR DEFENDANT NAVAJO REFINING
COMPANY, L.L.C.

_____10 / 26 / 15_____
Date

ROBERT O'BRIEN
Vice President and Refinery Manager
Navajo Refining Company, L.L.C.
501 E Main Street
Artesia, NM  88210

31